UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ROBERT DEQUAN BROWN,

        **Plaintiff,**

v.                                                    Case No. 20-CV-1131

CPT. CUSHING, LT. COLE,
SGT. KRCMA, CO GREER,
SIREENA B. PETERSON,
CO BUMKE, RN GARLAND,
RACHEL MATUSHAK, and
ZACHARY SANGRAW,

        **Defendants.**

---

## DECISION AND ORDER

---

      Plaintiff Robert Dequan Brown, who is representing himself and confined at Green Bay Correctional Institution, brings this lawsuit under 42 U.S.C. § 1983. Brown alleges that the defendants violated his constitutional rights when they failed to obtain immediate medical treatment for a stab wound after a prison fight on March 21, 2020. Defendants Shane Garland, Sireena Peterson, Michael Cole, David Greer and Rachel Larson Matushak filed a motion for summary judgment on the ground that they were not deliberately indifferent to Brown's medical needs. (ECF No. 30). As to defendants Cushing, Krcma, Bumke, and Sangraw, the defendants concede that a genuine dispute of material fact as to the seriousness of Brown's injuries precludes summary judgment in their favor. The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 18, 21.)

# FACTS[1]

*Parties*

At all times relevant, plaintiff Robert DeQuan Brown was incarcerated at Green Bay Correctional Institution (GBCI). (ECF No. 51, ¶ 1.) Defendant Daniel Cushing was a Captain at GBCI; Michael Cole was a Lieutenant; Phillip Krcma was a Correctional Sergeant; David Greer, Sireena Peterson, Aaron Bamke, and Zachary Sangraw were correctional officers; and Rachel Larson Matushak and Shane Garland were nurse clinicians. (*Id.*, ¶¶ 2-10.) Only defendants Cole, Greer, Peterson, Matushak, and Garland ("Moving Defendants") have moved for summary judgment on the merits.

*The Events of March 21, 2020, and Brown's Interactions with the Moving Defendants*

On March 21, 2020, Brown and two other inmates got into a fight, which was broken up with pepper spray. (ECF No. 32, ¶¶ 14-15.) Peterson along with non-defendant Officer Morales were tasked with escorting Brown, whose vision was

---

[1] The defendants state that, because Brown did not respond to their proposed findings of fact, their facts should be accepted as undisputed for purposes of summary judgment. (ECF No. 50 at 1.) However, district courts are to construe *pro se* submissions leniently and may overlook a plaintiff's noncompliance by construing the limited evidence in a light most favorable to the plaintiff. *See Grady v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). The court has been provided with Brown's sworn deposition testimony and Brown has submitted a sworn declaration. As such, the court will consider the facts contained therein where appropriate in deciding the defendants' motion.

impaired by the pepper spray, to the Restricted Housing Unit (RHU)[2]. (*Id.*, ¶ 16.) Peterson noticed that Brown was bleeding, lifted up his shirt, and told him that he'd been stabbed. (*Id.*, ¶ 18; ECF No. 48, ¶¶ 16-17.) Peterson also picked up the sharpened toothbrush that was used to stab Brown and gave it to another officer. (ECF No. 48, ¶ 16.) Once they arrived at the RHU, Peterson asserts she "informed Captain Cushing about the incident," although it is unclear from the record whether she told Cushing she believed Brown had been stabbed. (ECF No. 32, ¶ 21.)

Once in the RHU, Brown immediately told Cushing that Peterson told him he had been stabbed and that she saw blood. (ECF No. 32, ¶ 23.) Cushing looked at the wound and noted that it looked like a scratch. (*Id.*, ¶ 23.) Even though it looked like only a scratch, Cushing called the Health Services Unit (HSU) and spoke to Garland. (*Id.*, ¶ 33.) Cushing told Garland that the wound appeared superficial and that Brown "did not appear to be in any distress." (*Id.*, ¶ 33.) As a result of Cushing's description, Garland determined that Brown did not need emergency medical treatment and told Cushing to have Brown fill out a Health Services Request (HSR) to be seen in the HSU for further evaluation. (*Id.*, ¶ 52.) Brown filled an HSR out that night. (*Id*, ¶ 44.) Brown asserts that Garland did not want to see him because he was lazy and did not want to have to do extra work that night. (ECF No. 48, ¶¶ 20-21.)

---

[2] The defendants filed a video of what appears to be the fight and then presumably Peterson and Morales escorting Brown away from the fight. (ECF No. 36-4.) However, they do not reference the video in their supporting materials, provide the court with any context for the video, or explain why they included the video with their evidence. The court determines that, for purposes of analyzing the defendants' summary judgment motion, the video of the fight adds nothing to the analysis.

Brown then was escorted by Greer to the shower to rinse off the pepper spray. (ECF No. 32, ¶ 34.) According to Brown, Greer asked him if he wanted to be seen by HSU staff, and when Brown told Greer he did, Greer told Brown that, in order to be seen by HSU, he had to lock into his cell. (*Id.*, ¶ 35.) Brown states that Greer made him an empty promise regarding seeing HSU because Greer knew that, if he did not promise Brown he would see HSU, Brown would have refused to get into his cell. (*Id.*) Brown also notes that Greer knew or should have known that HSU staff is not available on third shift, so Greer had no other reason to offer the promise besides inducing Brown to lock into his cell. (*Id.*, ¶ 36.) Brown does not know what efforts Greer made to have HSU see Brown (*id.*, ¶ 37), and there is nothing in the record indicating what, if anything, Greer did to follow up with Brown's request to see HSU staff.

Two days later, on March 23, 2020, Lt. Cole visited Brown to take pictures of his wound. (ECF No. 32, ¶ 45.) According to Brown, while Lt. Cole was photographing him, Brown told Cole he was still in pain and asked Cole why he had not been seen by HSU on March 21. (*Id.*; ECF No. 48, ¶ 25.) Cole responded that he did not know and said that he should have been seen by HSU on March 21. (ECF No. 48, ¶ 25.) The defendants state that, in his deposition, Brown testified that he only included Cole in the lawsuit because "his employees were wrong, they were wrong. I was supposed to have seen HSU. If [Cole] was working that night, I would have seen HSU." (ECF No. 32, ¶ 45.) Brown also testified that he mainly named Cole as a defendant so he could be a witness. (*Id.*, ¶ 46.)

4

The defendants submitted video evidence from Cole's body camera of Cole's conversation with Brown. The video shows Brown ask Cole why he was not seen by HSU on March 21. Cole does admit that Brown should have been seen that night and that "someone dropped the ball." Brown also told Cole that he was still in pain and that he had blood in his spit on March 22. Cole informed Brown that he has an appointment in the HSU for the next day and that his situation is no longer an emergency. Brown did not ask to be seen by HSU that day. (ECF No. 36-5 at 1:42-2:40.)

HSU received Brown's HSR on March 24, 2022. (ECF No. 32, ¶ 53.) In his HSR, Brown stated that he was stabbed with a makeshift shank and that he was having chest pain and spitting up blood. (*Id.*) Brown also stated that he was worried about internal bleeding. (*Id.*)

Brown saw Nurse Matushak that same day. (ECF No. 32, ¶ 54.) Brown states that Matushak "regarde[d] his injuries with deliberate indifference and she was very dismissive and unconcerned about [his] injuries and [his] complaints of pain and discomfort." (ECF No. 48, ¶ 27.) Brown told Matushak that he believed his lung was punctured, that he could not breathe, and that he had been coughing up blood. (ECF No. 32, ¶ 54.) He also told Matushak that his puncture wound had already healed because he has "good healing skin" and that is why only a scratch remained. (*Id.*)

During her examination, Matushak "noted that there was 1.5-inch healing abrasion to right pectoral area. [Brown's] vital signs were normal, and his breathing was unlabored." ( ECF No. 32, ¶ 56.) She also noted that Brown was able to yell and

5

speak easily, and that there was no medical evidence supporting Brown's belief he had a punctured lung, such as abnormal breathing, shortness of breath, fatigue, or bluish skin due to lack of oxygen. (*Id.*, ¶¶ 56-57.) She did note that Brown had a "scrape" that appeared to be superficial, and there was "no redness, swelling, bruising or drainage." (*Id.*, ¶¶ 58-59.) She recommended that Brown keep the abrasion clean and dry. (*Id.*, ¶ 60.)

Brown submitted another HSR on March 31, 2020, complaining that he was still having chest pain as a result of being stabbed. (ECF No. 32, ¶ 64.) On April 2, 2020, he was seen by non-defendant Nurse Mary Alsteen, who determined that his residual chest pain was a result of soreness from the fight. (*Id.*, ¶ 65.) Alsteen noted that Brown "had nonlabored breathing, his lungs were normal, and . . . [had] an old healing white mark' which was less than 0.5 cm on center of chest." (*Id.*) Alsteen also observed that there were no signs or symptoms of infection. (*Id.*) She prescribed him 200 mg of ibuprofen for three days. (*Id.*)

Brown states that he permanently suffers from back pain and has gained weight because he is now unable to work out. (ECF No. 32, ¶ 67.) There is no evidence in the record that Brown had any additional follow-up appointments for his injuries from the fight or that he has ever been diagnosed with a punctured lung or any other medical issues related to his alleged injuries.

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Brown claims that Peterson, Greer, Garland, and Cole were deliberately indifferent to his medical needs when they failed to secure medical treatment for him

7

between March 21, 2020, and March 24, 2020. He claims that Matushak was deliberately indifferent to his medical needs when she examined him on March 24, 2020.

A prison official violates the Eighth Amendment when he is deliberately indifferent "to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "To state a cause of action, a plaintiff must show (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). For purposes of summary judgment, the defendants do not dispute that Brown suffered an objectively serious medical condition. (*See* ECF No. 31 at 18.)

To demonstrate deliberate indifference, a plaintiff must show "that an official *actually* knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (emphasis in original). The plaintiff must show that the prison official's choices "were so 'significant a departure from accepted professional standards or practices' that it is questionable whether they actually exercised professional judgment." *Stallings v. Liping Zhang*, 607 Fed. Appx. 591, 593 (7th Cir. 2015) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)). This includes where a prison official fails to act or do anything to address the serious medical need. *Gayton v. McCoy*, 593 F.3d 610, 623-624 (7th Cir. 2010) (reversing summary judgment in favor of a nurse who refused to examine or treat a vomiting inmate). It also includes where an official delays necessary treatment, aggravating a condition or needlessly prolonging a plaintiff's pain. *Gomez v. Randle*, 680 F.3d 859, 865-66 (7th Cir. 2012).

8

Case 2:20-cv-01131-WED   Filed 02/10/22   Page 8 of 13   Document 52

The moving defendants argue that no reasonable factfinder could conclude they were deliberately indifferent because they either were not responsible for addressing Brown's condition, did not know about Brown's condition, or were not responsible for the delay in Brown's treatment.

Brown has not presented any evidence that Cole was present on March 21, 2020, or that he participated in deciding whether to seek medical attention for Brown that night. Brown's claim against Cole is based on the fact that Cole was the supervisor of the staff working that night. Supervisors can be held liable for constitutional violations caused by their employees when the violation happens at the supervisor's direction or with the supervisor's knowledge and consent. *Hildebrant v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003). In other words, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.*

Brown does not establish that Cole was deliberately indifferent to his medical needs on March 23. The video shows that Brown informed Cole he was still in pain and had coughed up blood the day before. Cole responded to this information by telling Brown that his situation no longer appeared to be a medical emergency and that he had an appointment in the HSU the next day. Brown did not insist to be seen in HSU sooner. Thus, no reasonable factfinder could conclude that Cole disregarded a substantial risk of harm to Brown. Summary judgment is granted in Cole's favor.

Also, no reasonable factfinder could conclude that Garland was deliberately indifferent to Brown's condition. It is undisputed that Garland did not see Brown

following the fight, nor did he treat him for any injuries he claims he suffered in the fight. (ECF No. 32, ¶ 47.) He was unaware that Brown claimed his lung had been punctured. Garland only knew what Cushing told him—that Brown had a "scratch" (ECF No. 32, ¶ 51) and "did not appear to be in any distress" (ECF No. 32, ¶ 33). Brown presents no evidence that Garland's decision should be regarded as a significant departure from professional standards. He speculates that Garland was just trying to avoid having to work that night, but he presents no evidence to back up his speculation. Bald assertions that are not bolstered by more specific evidence are insufficient to create a genuine issue of material fact. *Drake v. Minn Mining & Mfg Co.*, 134 F.3d 878, 887 (7th Cir. 1998). Summary judgment is granted in favor of Garland.

Similarly, no reasonable jury could conclude that Matushak's treatment of Brown was a significant departure from professional standards. The undisputed evidence is that Matushak conducted a thorough examination of Brown. She noted that his vital signs were normal, his breathing was unlabored, he could yell and speak easily, and that his wound was a superficial scrape. She did not see any symptoms consistent with a punctured lung. Also, as Brown's wound was not swollen or pus-filled, there were no indications of infection.

At most Brown takes issue with Matushak's manner and tone, but he presents no evidence that, as a result of Matushak's medical care, his condition was aggravated. Indeed, the undisputed evidence shows the opposite. When he saw Alsteen on April 2, his wound had nearly fully healed, and Alsteen determined that his residual pain was

10

likely a result of muscle soreness from the fight. There is also no evidence in the record that after April 2 Brown had follow-up appointments for his pain, or that any other medical professional disagreed with Matushak's assessment and later discovered Brown had suffered a punctured lung. Summary judgment is granted in Matushak's favor.

Regarding Peterson, taking the facts in a light most favorable to Brown, Peterson noticed Brown was bleeding, lifted up his shirt, and discovered he had been stabbed. She then picked up the sharpened toothbrush that apparently caused the wound. The defendants argue that, under *Burks v. Raemish*, 555 F.3d 592, 594-596 (7th Cir. 2009), which establishes that prison employees cannot be held liable for failing to perform duties that are clearly someone else's job, Peterson cannot be held liable for failing to get Brown medical attention. According to the defendants, Peterson's sole responsibility was to transport Brown to the RHU; it was not her job to decide whether to get medical attention for Brown. However, where a plaintiff's condition "is so obvious that even a lay person would perceive the need for a doctor's attention,'" *Roe v. Elyea,* 631 F.3d 843 857 (7th Cir. 2011) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)), failing to address that condition may constitute deliberate indifference. A reasonable jury could find that, given her recognition that Brown had been stabbed, Peterson had an obligation to seek medical care for him. The mere fact that she was tasked solely with transporting Brown does not as a matter of law relieve her of this obligation in light of an obvious serious medical need. Peterson's motion for summary judgment is denied.

11

Turning to Greer, taking the facts in a light most favorable to Brown, Greer asked Brown if he wanted to be seen by HSU that night. Brown said he did. Brown asserts that Greer then promised him that he would see HSU in order to induce him to lock into his cell. Greer presents no evidence as to why he asked Brown if he wanted to go to HSU if he did not intend to take him there, nor does he present evidence that he actually took steps to attempt to have Brown examined by HSU. "Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). Without Greer's version of the events, a question of material fact exists as to what Greer knew and what he did once Brown told him he wanted to go to HSU that same day. Summary judgment on the claim against Greer is denied.

## CONCLUSION

There are no genuine issues of material fact as to the claims against Cole, Garland, and Matushak. No reasonable factfinder could conclude that these defendants were deliberately indifferent to Brown. Summary judgment is granted in their favor and these defendants are dismissed. As to Peterson and Greer, genuine issues of material fact exist as to whether they were deliberately indifferent to Brown's objectively serious medical needs. Summary judgment on the claims against Peterson and Greer is denied.

ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 53) is **GRANTED in part and DENIED in part**. Summary judgment is granted in favor of Shane Garland, Michael Cole, and Rachel Larson Matushak. Summary judgment is denied as to David Greer and Sireena Peterson.

**IT IS FURTHER ORDERED** that Shane Garland, Michael Cole, and Rachel Larson Matushak are **DISMISSED**.

**IT IS FURTHER ORDERED** that the court will set a telephonic status conference to discuss next steps.

Dated at Milwaukee, Wisconsin this 10th day of February, 2022.

BY THE COURT

WILLIAM E. DUFFIN
United States Magistrate Judge